**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

WILFREDO ROSARIO,

                                            Plaintiff,

            v.                                                    No. 12-CV-1506
                                                                          (GLS/CFH)

CAPTAIN ANSON, Summit Shock Incarceration
Facility; JOHN DOE #1, Facility Nurse, Summit
Shock Incarceration Facility; JOHN DOE #2,
Primary Care Provider, Hale Creek Incarceration
Facility; CORRECTIONAL OFFICER BLYTH,
Summit Shock Incarceration Facility;

                                            Defendants.
_____

**APPEARANCES:**                              **OF COUNSEL:**

WILFREDO ROSARIO
Plaintiff Pro Se
2850 Grand Concourse
(198th Street), Apt. # B4
Bronx, New York 10458

HON. ERIC T. SCHNEIDERMAN           ROGER W. KINSEY, ESQ.
Attorney General for the                        Assistant Attorney General
      State of New York
Attorney for the Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

      Plaintiff pro se Wilfredo Rosario ("Rosario"), a former inmate in the custody of the New

York State Department of Corrections and Community Supervision ("DOCCS"), brings this

_____

      [1]  This matter was referred to the undersigned for report and recommendation
pursuant to 26 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

action pursuant to 42 U.S.C. § 1983 alleging that defendants, two DOCCS employees and two "John Doe" defendants, violated his constitutional rights under the Eighth and Fourteenth Amendments. Compl. (Dkt. No. 2 at 1–12). Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), submitted on behalf of defendants Blyth and Anson. Dkt. No. 33. Rosario does not oppose the motion.[2] For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

The facts are related herein in the light most favorable to Rosario as the non-moving party. See subsection II(A) infra.

## A. November 1, 2010 - December 16, 2010

On November 1, 2010, while at Summit Shock Incarceration Facility ("Summit Shock"), Rosario was participating in a physical training session when he felt a "click" in his left knee. Compl. at 8. After returning to his dormitory, Rosario advised non-moving party Drill Instructor Pape of the pain he was experiencing, to which Pape instructed him to fill out a sick "call slip" to be seen the next day. Id.

On November 2, 2010, Rosario reported to sick call, where he was seen by defendant John Doe # 1, a facility nurse, who advised Rosario there was nothing wrong with his knee

---

[2] By notice dated October 18, 2012, the court notified Rosario that his response to defendants' motion was due on or before November 6, 2012. Dkt. No. 36. Rosario failed to respond to the motion by November 6, 2012. By order dated November 21, 2012, the court sua sponte granted Rosario's an extension of December 28, 2012 to respond to the motion. Dkt. No. 37. To date, Rosario has failed to respond to the motion.

and gave Rosario anti-inflammatory medication and Icy Hot.  Compl. at 8.  That night,

Rosario continued to have extreme pain and began to limp.  Id.  Rosario informed Pape of

his pain and filled out another call slip.  Id.

On November 3, 2010, Rosario felt more weakness in his left knee and had difficulty

walking but was ordered to participate in physical training, including a run.  Compl. at 8.

When Rosario arrived at sick call, he advised the medical staff that the physical training

sessions were making his condition worse.  Id.  Rosario was told that there was nothing

wrong with his knee and that the knee pain was not uncommon for someone his weight.

Id. at 8–9.  Rosario also advised John Doe #1 that he was asthmatic and his inhaler was

half empty.  Id. at 9.  Despite Rosario's concerns with having an inhaler, John Doe #1

ignored Rosario's comments.  Id.  Upon returning to the dormitory, plaintiff was advised

that he was being sent to an outside "call out" to see defendant John Doe #2, a health

care provider at Hale Creek Correctional Facility ("Hale Creek"), and Rosario was again

told that there was nothing wrong with his left knee, he was not to be provided an inhaler,

and his physical training sessions would continue.  Id.

From November 3, 2010 through November 5, 2010, Rosario's pain escalated.  Compl.

at 9.  Rosario's request for a referral to see a specialist was denied.  Id.  Rosario

continued to participate in physical training sessions, experiencing pain, discomfort, and

swelling from the knee injury, and was told that he would not receive a new inhaler.  Id.

Pape and non-party Kate continued to require Rosario's participation in physical training

sessions.  On November 5, 2010, Rosario went to sick-call and saw John Doe #1, who,

despite Rosario's complaints, ignored Rosario's complaints.  Id.  The same exchange

occurred on November 8, 2010.  Id.  On November 9, 2010, John Doe #1 took Rosario's

3

empty inhaler and advised Rosario that the inhaler would not be replaced.  Id.

On November 10, 2010, after a three hour physical training session, Rosario was unable to participate further, started wheezing, and began to walk.  Compl. at 9. Defendant Blyth, a correctional officer, told Rosario that if he continued to walk, thereby disobeying Blyth's orders given during the physical training session, Rosario would be written up for disobeying a direct order.  Id. at 10.  Rosario replied that he "was not dieing [sic] for anyone."  Id.  Subsequently, Blyth placed Rosario in the back of a pick-up truck and non-party Sergeant Whittaker took Rosario to receive medical attention.  Id. Unidentified medical personnel accused Rosario of lying about having asthma, despite Rosario's documented history of the condition.[3]  Id.  Upon returning to the dormitory, Rosario received a misbehavior report authored by Blyth for refusing to comply with a direct order and lying.  Id.; Dkt. No. 2 at 41 (misbehavior report dated November 10, 2010).  On the same day, Rosario filed a contact slip to see the corrections counselor, non-party Moody, to discuss his constant pain and desire to leave the program due to the inadequate medical treatment he was receiving.  Id.; Dkt. No. 2 at 13 (contact slip addressed to Moody).

Rosario's pain continued through two more days of physical training sessions and on November 12, 2010, Rosario was called into defendant Captain Anson's office to discuss his request to see Moody.  Compl. at 10.  After discussing his pain and lack of treatment with Captain Anson, Rosario advised Anson that he wished to sign out of the program, to which Anson refused and instead, advised Rosario to take the weekend to think about the

---

[3]  In his complaint, Rosario incorporates certain documents by reference that indicate Rosario's asthma is mild and intermittent.  Dkt. No. 2 at 45.

decision until further discussion between the two on the following Monday, November 15, 2010. Id. at 11.

On November 15, 2010, Rosario did not hear from Anson. Compl. at 11. The following day Rosario was taken to Rikers Island on a court trip, where he was seen by medical staff, given medication and an ace bandage, and told his leg looked as if it was getting worse. Id. Rosario was advised to bring his condition to the attention of the medical staff at Summit Shock. Id. While at Rikers Island, plaintiff wrote a complaint to non-party Commissioner of the Department of Corrections Fischer, detailing the inadequate care he was receiving at Summit Shock. Id. On December 16, 2010, non-party Carl J. Koenigsmann, M.D., responded to Rosario's complaint to Fischer, noting that Rosario went to sick call six times between October 28, 2010 and November 16, 2010 and a primary care physician found Rosario's mild inflammation of the knee was not uncommon for someone of Rosario's weight. Dkt. No. 2 at 42.

Rosario contends that, as a result of defendants' deliberate indifference to his medical conditions, he suffered from meniscus and ligament tears that may require surgery. Compl. at 3.


### B. Grievances

Rosario indicates in his complaint that he did not know whether Summit Shock had a grievance procedure and did not file a grievance at that facility. Compl. at 4. However, Rosario filed a grievance at Mohawk Correctional Facility ("Mohawk"), alleging claims of medical indifference and receipt of inadequate medical care. Id. Rosario further indicates that the Mohawk grievance "[n]ever made it to an Appeal Process[; yet, he] filed

5

complaints with" several officers outside of Summit Shock.  Id. at 4; see, e.g., Dkt. No. 2 at

13 (contact slip addressed to Moody) 14 (an affidavit of service for a complaint filed with

Commissioner Fischer), 42–44 (responses to the complaint filed with Commissioner

Fischer).


## II.  Discussion

Rosario claims that his Eighth Amendment rights were violated when defendants either

denied him medical attention or provided him with inadequate medical treatment.

Defendants contend that Rosario failed to exhaust administrative remedies as required by

the Prison Litigation Reform Act of 1995 ("PLRA").  Defendants further contend that

Rosario's Eighth Amendment claims should be dismissed because Rosario failed to

demonstrate their personal involvement in the alleged constitutional violations as well as

the plausibility of the claims.  Finally, defendants argue that Rosario has no claim for a

false misbehavior report and Blyth and Anson are entitled to qualified immunity.


### A.  Legal Standard

Under Fed. R. Civ. P. 12 (b)(6), a defendant may move to dismiss a complaint for

"failure to state a claim upon which relief can be granted."  A motion to dismiss a

complaint, brought pursuant to Rule 12(b)(6) calls upon the court to assess the facial

sufficiency of that pleading using a pleading standard which "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation" in order to withstand

scrutiny.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly,

550 U.S. 554, 555 (2007)).  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Iqbal, 556 U.S. at 677–78 (quoting FED. R. CIV. P. 8(a)(2)).  That rule commands that a complaint contain more than mere legal conclusions.  See id. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of a cause of action will not do.'" (quoting Twombly, 550 U.S. at 555)).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the facts alleged in the complaint as true and draw all inferences in favor of the non-moving party.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555–56) ; see also Cooper v. Pate, 378 U.S. 546, 546 (1964) (citations omitted); Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003) (citations omitted); Burke v. Gregory, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (citations omitted).  However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. Iqbal, 556 U.S. at 678.  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); see also Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008).  As the Second Circuit has observed, "[w]hile Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'"  In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 570) (alterations and footnote omitted).

Consideration of a motion to dismiss "is limited to the facts asserted within the four

7

corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citations omitted). However, there are instances where the court may consider documents outside those previously referenced, including when the documents are only "partially quoted in [the] complaint . . .; integral to [the] complaint . . .; [or] relied upon . . . in drafting the complaint . . . ." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal quotation marks and citations omitted). Specifically, the following may be considered when construing a complaint's pleading sufficiency:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, . . . and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

Weiss v. Incorp. Village of Sag Harbor, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (citations omitted).

When assessing the sufficiency of a complaint against this backdrop, "[w]e construe plaintiffs' complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiffs' favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (citing Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009)) (internal quotation marks omitted). When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to special solicitude, that a pro se litigant's
> submission must be construed liberally, and that such
> submissions must be read to raise the strongest arguments
> that they suggest.  At the same time, our cases have also
> indicated that we cannot read into pro se litigant's allegations
> or arguments that the submissions themselves do not suggest
> that we should not excuse frivolous or vexatious filings by pro
> se litigants, and that pro se status does not exempt a party
> from compliance with relevant rules of procedural and
> substantive law . . . .

Id. (Internal quotation marks, citations, and footnotes omitted); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).

## B.  Exhaustion of Remedies

The PLRA requires a prisoner to exhaust all available administrative remedies before he can bring an action with respect to prison conditions pursuant to any federal law.  See 42 U.S.C. § 1997e(a) (codification of exhaustion requirement); Woodford v. Ngo, 548 U.S. 81, 93–103 (2006).  "Exhaustion is 'mandatory' and 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.'" Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)).  "Section 1997e(a) requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'"  Id. at 305 (quoting Woodford, 548 U.S. at 90) (emphasis in original).

Exhaustion for an inmate in DOCCS custody is generally achieved through the Inmate

Grievance ("IGP").  See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.1, et seq.; see also note 7 supra.  Allegations of staff harassment are subject to an expedited procedure whereupon the complaint is first reviewed by the superintendent and only if it is not a bona fide claim will it be returned to the IGP for normal processing.  N.Y. COMP. CODES. R & REGS. tit. 7, § 701.8.  Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.  Torres v. Carry, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009); see also N.Y. COMP. CODES R. & REGS. tit. 7 § 701.5(d)(2)(ii) ("The CORC shall review each appeal, render a decision on the grievance, and transmit its decision . . . within 30 calendar days").  Disagreement with the superintendent's decision in the expedited review also requires an appeal to CORC.  N.Y. COMP. CODES. R & REGS. tit. 7, § 701.8 (g)–(h); see also Espinal v. Goord, 588 F.3d 119, 125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through CORC).  Exhaustion must precede filing a lawsuit.  Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed therefore is insufficient.") abrogated in part on other grounds by Porter, 534 U.S. 516.

"[F]ailure to exhaust is an affirmative defense in a lawsuit governed by the PLRA." Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009) (per curiam) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).  "The exhaustion defense is one that is not particularly well-suited for resolution for a motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred."  Lewis v. Havernack, No. 12-CV-0031 (GLS/DEP), 2013 WL 1294606, at *4 (N.D.N.Y. Mar. 28, 2013) (quoting Laporte v. Fisher, No. 11-CV-9458, 2012 WL 5278543, at *5 (S.D.N.Y. Oct. 24, 2012) ("Dismissal pursuant

to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint." (citation omitted)).[4]  Before dismissing a prisoner's complaint for failure to exhaust, "a court is obligated to establish the availability of an administrative remedy from a legally sufficient source . . ." Mojias v. Johnson, 351 F.3d 606, 609 (2d Cir. 2003) (internal quotation marks and citation omitted).  "Since the availability of administrative remedies for an inmate's particular grievance is typically not clear from the face of a complaint, the better practice in a given case may be to afford notice and an opportunity to respond before dismissal when exhaustion is the basis for that action." Id. at 610 (holding that notice and an opportunity to respond are necessary before deciding whether sua sponte dismissal for failure to exhaust is appropriate) (alterations and citation omitted).

   In this case, there is an absence of the clearest indication in Rosario's complaint that Rosario has failed to exhaust all available administrative remedies.  While Rosario indicates that he was unaware of a grievance procedure at Summit Shock and did not file a grievance there, Rosario did file a grievance at Mohawk alleging claims arising from events that occurred at Summit Shock.  Rosario further acknowledges that the Mohawk grievance did not go through an appeals process but contends, presumably in an attempt to justify such failure, that he made repeated complaints to various officers.  Rosario alleges that, on multiple occasions, he brought medical complaints to defendants and other medical and correctional personnel.  Based on these factual allegations, it is unclear whether administrative remedies were available to Rosario at Summit Shock.  Gayle v.

_____

   [4]  All unpublished cases will be annexed as exhibits to this Report and Recommendation.

Benware, 716 F. Supp. 2d 293, 298 (S.D.N.Y. 2010) (internal citations omitted). It is also unclear why Rosario was able to file a grievance at Mohawk but not at Summit Shock. "Under certain circumstances, a correctional institution's failure to provide an inmate with sufficient information about the available grievance procedures may excuse his failure to exhaust administrative remedies." Arnold v. Goetz, 245 F. Supp. 2d 527, 536 (S.D.N.Y. 2003) (citation omitted). In light of Rosario's pro se status, the Court must draw all reasonable inferences in Rosario's favor, "namely, that his lack of sufficient knowledge about the procedure is attributable to correctional officials [at Summit Shock] rather than to himself." Id. at 539. Thus, Rosario's allegations cast sufficient doubt as to whether he met his exhaustion requirements and defendants' motion to dismiss on this ground should be denied. Laporte, 2012 WL 5278543, at *5 (holding that, absent a clear indication from the face of the complaint that a plaintiff has failed to exhaust, dismissal pursuant to Rule 12(b)(6) is not appropriate).

For these reasons, defendants' motion to dismiss on the basis of Rosario's alleged failure to exhaust should be denied without prejudice and defendants may raise the defense at a point when it can be analyzed based upon a more fully developed record.

## C. Eighth Amendment

### 1. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).

Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir. 1986)).

Here, defendants contend that Rosario has failed to allege the personal involvement of Blyth and Anson. Liberally construing Rosario's allegations and interpreting them to raise the strongest argument they suggest, Triestman 470 F.3d at 474, Rosario has successfully alleged the personal involvement of both Blyth and Anson. Turning first to the allegations made against Blyth, Rosario contends that Blyth directly participated in a constitutional violation by delaying the provision of medical care to him when Blyth insisted that Rosario continue to run during physical training, despite Rosario's complaints of shortness of breath. Thus, Rosario has alleged that Blyth directly participated in the alleged constitutional violation. As for Anson, Rosario contends that after informing Anson

of the alleged constitutional violations through a complaint and a verbal conversation on

November 12, 2010, Anson made no attempt to remedy the alleged wrongdoing, instead

advising plaintiff to take time to rethink his decision to leave the program.  Further, Rosario

contends that Anson exhibited deliberate indifference to his rights by failing to act on the

information that unconstitutional acts were occurring.  For these reasons, Rosario has also

alleged sufficient facts establishing Anson's personal involvement in this action.

    Given these allegations, along with the lack of evidence at this time showing that any

further steps were taken, on the part of Blyth and Anson, in an attempt to limit the

exacerbation of Rosario's injury, leads to a recommendation denying defendants' motion

on this ground.[5]  This dismissal should be without prejudice and defendants may raise

these arguments at a point when it can be analyzed based upon a more fully developed

record.


## 2.  Medical Indifference

    The Eighth Amendment prohibition extends to the provision of medical care.

Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The test for a § 1983 claim is

twofold. First, the prisoner must show that the condition to which he was exposed was

sufficiently serious.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Second, the prisoner

must show that the prison official demonstrated deliberate indifference by having

knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials

_____

    [5]  Despite the Court's recommendation to deny defendants' motion on the personal
involvement ground, as discussed infra, the Court recommends that Blyth be dismissed
from this action.

who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162–63 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

> If, on the other hand, a plaintiff's complaint alleges that treatment was provided but was inadequate, the second inquiry of the objective test is narrowly confined to that specific alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition.  For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, [the focus of the] inquiry [is] on the challenged delay of interruption in treatment, rather than the prisoner's underlying medical condition alone.

Lewis v. Wallace, No. 11-CV-0867 (DNH/DEP), 2013 WL 1566557, at *6 (N.D.N.Y.) adopted by, No. 11-CV-0867 (DNH/DEP), 2013 WL 1566555 (N.D.N.Y. Apr. 12, 2013) (citing Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006)) (internal quotation marks

omitted).  In other words, the Court asks "whether, from an objective standpoint, the temporary deprivation was sufficiently harmful to establish a constitutional violation." Frank v. Cnty. of Ontario, 884 F. Supp. 2d 11, 19 (W.D.N.Y. 2012) (citing Smith, 316 F.3d at 186).

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate.  Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Applying this legal framework to this action, Rosario has alleged facts satisfying the objective prong.  Between November 1, 2010 and November 16, 2010, Rosario repeatedly complained about the chronic swelling, pain, and discomfort in his knee, meniscus and ligaments tears, as well as a constant need for an asthma inhaler.  Construing the facts in a light most favorable to the  plaintiff, the pain, discomfort, and swelling created by the injury were sufficiently serious to have caused Rosario difficulty in walking, thereby affecting his daily activities.  Brock, 315 F.3d at 162–63.  As for Rosario's asthmatic symptoms, "[a]lthough an asthma condition alone may not be serious enough to constitute a sufficient medical condition, an asthma attack, depending on its severity, may be

sufficient." <u>Carlisle v. Goord</u>, No. 03-CV-296 (FJS/GHL), 2007 WL 2769566, at *4

(N.D.N.Y. Sept. 21, 2007) (citing <u>inter</u> <u>alia</u> <u>Scott v. DelSignore</u>, No. 02-CV-029F, 2005 WL

425473, at *9 (W.D.N.Y. Feb. 18, 2005)).  Here, Rosario complained of having asthma

and asthmatic symptoms during a physical training session on November 10, 2010.

Liberally construing Rosario's complaint, Rosario has alleged that he had an asthma

attack during the physical training session.  In his complaint, Rosario has also

incorporated certain documents by reference reflecting that his asthma condition has been

mild and intermittent.[6]  Thus, accepting all of the allegations above as true, Rosario has

alleged sufficient facts plausibly establishing the seriousness of his knee injury and

asthma conditions.  Accordingly, Rosario has plausibly alleged the objective prong of the

Eighth Amendment analysis.


### a.  John Doe #1

Rosario first contends that on November 2, 2010, John Doe #1 provided him with

inadequate pain-relief medication to treat his injured knee because he continued to

experience extreme physical pain after taking the medication.  Here, the inquiry becomes

whether the alleged inadequacy was sufficiently harmful.  <u>Lewis v. Wallace</u>, 2013 WL

1566557, at *6.  After taking the pain-relief medication that John Doe #1 had administered,

Rosario's pain was severe enough that Rosario began to limp.  Shortly thereafter, Rosario

filled out another call slip to receive medical attention.  Thus, accepting all allegations as

true, Rosario has plausibly alleged that the challenged deprivation had subjected him to a

---

[6] It appears that Rosario may have documentation of his history of having asthma. Dkt. No. 2 at 13 (indicating that his mother has such documentation in her possession).

serious risk of harm. As for the subjective prong, John Doe #1 was made known of Rosario's injuries and complaints and prescribed Rosario with anti-inflammatory medication and Icy Hot. This claim against John Doe #1 is a mere disagreement over proper treatment, which does not create a constitutional claim. <u>Chance</u>, 143 F.3d at 703. Therefore, Rosario has failed to allege a plausible claim against John Doe #1 based on the provision of inadequate medical care on November 2, 2010.

Next, Rosario contends that on November 3, 5, and 8, 2010 he continued to inform John Doe #1 of his serious knee pain as well as the need for an asthma inhaler, but John Doe #1 dismissed such concerns. Finally, on November 9, 2010, John Doe #1 informed Rosario that his empty inhaler would not be replaced. Given Rosario's repeated complaints and John Doe #1's continued denial of medical treatment, Rosario has plausibly alleged that John Doe #1 intentionally denied him medical care. <u>Estelle</u>, 429 U.S. at 104. Accordingly, Rosario has only plausibly alleged a claim against John Doe #1 based on the denied provision of medical care after November 2, 2010.

### b. John Doe #2

Rosario claims that John Doe #2 denied him treatment. When Rosario met with John Doe #2, Rosario was told that he would not be receiving an inhaler, there was nothing wrong with his knee, and physical training sessions would continue. The gravamen of Rosario's claim against John Doe #2 was a disagreement over diagnosis and proposed treatment, which do not constitute deliberate indifference. <u>Sonds</u>, 151 F. Supp. 2d at 312; <u>Chance</u>, 143 F.3d at 703. Moreover, were John Doe #2 negligent in diagnosing the severity of Rosario's knee injury and asthma condition, negligence alone is insufficient to

allege a deliberate indifference claim. <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996). As such, Rosario has failed to allege a plausible claim that John Doe #2 was made aware of his serious medical conditions but intentionally denied him medical treatment. Accordingly, Rosario has failed to plausibly allege an Eight Amendment claim against John Doe #2.

### c. Blyth

Rosario claims that Blyth delayed in providing him medical attention. Here, in analyzing the objective prong, the Court focuses on whether the temporary deprivation was sufficiently harmful. <u>Lewis v. Wallace</u>, 2013 WL 1566557, at *6. Rosario alleged that on November 10, 2010, Blyth was yelling at him to stop walking and continue running. Compl. at 10. Rosario "slowed down and began walking two more time's [sic] before [he] could not take it anymore." <u>Id.</u> Rosario told Blyth that he is asthmatic and needed an inhaler. <u>Id.</u> Blyth warned Rosario of disobeying a direct order, thereby risking the filing of a misbehavior report, and directed Rosario to continue running. <u>Id.</u> Rosario refused, and Blyth then placed Rosario on a truck to be taken to the nurse's station. <u>Id.</u> Even assuming the truth of Rosario's assertions, and drawing all reasonable inferences in Rosario's favor, Rosario has failed to satisfy the objective prong. Rosario makes no allegation against Blyth showing how the delay in obtaining him medical assistance for his asthma condition had harmed him in any manner.

Furthermore, Rosario has also failed to plausibly allege that Blyth knew of and disregarded his serious medical needs. <u>Chance</u>, 143 F.3d at 702. After Rosario informed Blyth that he was asthmatic, needed an inhaler, and refused to continue to run, Blyth

19

placed Rosario on a pickup truck to be transported to obtain medical attention. Rosario alleges that this all occurred within one day. Such action was reasonable in response to Rosario's actions and verbal complaints concerning his asthma condition. <u>Farmer</u>, 511 U.S. at 844; <u>see</u> <u>Atkins v. Cnty of Orange</u>, 372 F. Supp. 2d 377, 411 (S.D.N.Y. 2005) (dismissing a deliberate indifference claim where plaintiff received psychiatric attention within one day of admission to the correctional facility). Accordingly, defendants' motion on this ground should be granted.

### d. Anson

Lastly, Rosario claims Anson denied him the provision of medical care. Once notified of Rosario's ongoing knee pain and asthma conditions, the inadequate medical care being provided, and Rosario's desire to discontinue physical programming, Anson ignored Rosario's complaints and instead, suggested that Rosario take the weekend to reevaluate his decision to leave the program. Defendants argue that Rosario failed to allege whether Anson actually denied his request to leave the program. However, Rosario alleged that "[d]espite my constant refusal's [sic] I was still forced to stay there." Compl. at 11. Drawing every reasonable inference in favor of the plaintiff, the Court must conclude that Anson had completely denied Rosario's request. Taken as true, Rosario's allegations plausibly state Anson was aware of a substantial risk of harm to Rosario and failed to take reasonable measures in response to Rosario's medical conditions. <u>Salahuddin</u>, 467 F.3d at 280 (citing <u>Farmer</u>, 511 U.S. at 835). Thus, Rosario has sufficiently alleged that Anson intentionally denied Rosario access to medical care. <u>Estelle</u>, 429 U.S. at 104. Accordingly, defendant's motion on this ground should be denied.

20

### D. "John Doe" Defendants

In a footnote contained in a report-recommendation dated September 18, 2012, the Southern District of New York recommended dismissal of the John Doe defendants because Rosario had failed to file an amended complaint naming those defendants as well as serving those defendants with process. Dkt. No. 29 at 1 n.1. However, the report-recommendation did not order the John Doe defendants to be terminated from this action. Further, by a memo endorsement dated September 24, 2012, the Southern District of New York stated, "[t]here is no need for objections to the report which does not propose any substantive relief[, i]nstead, the Magistrate Judge finds that venue is appropriate in the NDNY, and inappropriate in the SDNY. . . . The Clerk of Court is directed to transfer this matter to the NDNY . . . ." Dkt. No. 30. Upon determining that a claim against the John Doe #1 survive the motion to dismiss, we must proceed to a Rule 4(m) discussion.

Where a defendant has not been served within 120 days after the complaint is filed, the Court must, on motion or <u>sua sponte</u> after notifying the plaintiff, dismiss the complaint without prejudice as to that defendant or "order that service be made within a specified time." FED. R. CIV. P. 4(m). If, however the plaintiff demonstrates good cause for service failures, the Court must also extend the time to serve. <u>Id.</u> Additionally, the Second Circuit has held that "district courts have discretion to grant extensions even in the absence of good cause." <u>Zapata v. City of New York</u>, 502 F.3d 192, 196 (2d Cir. 2007).

As stated previously, the Court must provide Rosario special solicitude because of his pro se status. In determining good cause for service failures, it must be noted that Rosario did not have an opportunity to object to the report-recommendation. Further, as discussed <u>supra</u>, Rosario has alleged sufficient facts against the John Doe #1 for the

claim against him to survive the motion to dismiss. For these reasons, Rosario will be given thirty days as of the date of any order adopting this report and recommendation to file an amended complaint, naming John Doe #1; otherwise John Doe #1 should be dismissed from this action.

### E.  False Misbehavior Report

Construing the plaintiff's complaint liberally, Rosario alleges that defendant Blyth violated his constitutional rights by lodging a false misbehavior report. An inmate has a right not to be deprived of a liberty interest without due process. However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder,105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v. Kelly, 854 F.2d 584, 588–90 (2d. Cir. 1988)). Here, Rosario merely alleges that the report written by Blyth was a result of misinformation provided to Blyth, by the medical staff. Without alleging more wrongdoing on Blyth's part, plaintiff's assertions against Blyth must fail as a matter of law. Accordingly, defendant's motion on this ground should be granted.

### F.  Qualified Immunity

Defendants claim that even if Rosario's constitutional claims against them are substantiated, they are nevertheless entitled to qualified immunity. Qualified immunity

generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229–30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 F. App'x 146 (2d Cir. 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry must be discussed with regard to Rosario's Eighth Amendment right to medical care.

It is well-settled that between November 1, 2010 and December 3, 2010, the Eighth Amendment protected an inmate from the infliction of cruel and unusual punishment, which extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). Therefore, it would not be objectively reasonable to conclude that indifference to a medical condition that is causing pain and swelling, which inhibited Rosario's ability to walk, would fail to violate this right. Thus, accepting all of Rosario's allegations as true, qualified immunity cannot be granted

to defendants for their alleged misconduct. Accordingly, defendants' motion on this ground should be denied.

### III. Conclusion

For the reasons stated above, it is hereby:

1.   **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 33) be **DENIED** as to all claims except Rosario's (1) Eighth Amendment deliberate indifference claim against defendant Blyth and (2) Fourteenth Amendment claim of a false misbehavior report against defendant Blyth; AND

2.   It is further **RECOMMENDED** that defendants John Doe #2 and Blyth be dismissed from this action; AND

3.   It is further **RECOMMENDED** that if this Report and Recommendation is adopted, Rosario be given thirty days of any such order allowing for an opportunity to amend his complaint to identify and serve John Doe #1.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated:  August 26, 2013
           Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

24