**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

WILFREDO ROSARIO,

                Plaintiff,

        v.                                    No. 9:12-CV-1506
                                                     (BKS/CFH)
CAPTAIN ANSON, Summit Shock
Incarceration Facility,

                Defendant.

---

**APPEARANCES:**                            **OF COUNSEL:**

WILFREDO ROSARIO
Plaintiff Pro Se
10947 Savannah Wood Ct.
Orlando, Florida 32832

HON. ERIC T. SCHNEIDERMAN        COLLEEN D. GALLIGAN, ESQ.
Attorney General for the                  Assistant Attorney General
    State of New York
Attorney for the Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff pro se Wilfredo Rosario ("Rosario"), a former inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant, Captain Patrick Anson ("Anson"), violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No.

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636 (b) and N.D.N.Y.L.R. 72.3(c).

2 at 1-12). Presently pending is Anson's motion for summary judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56. Dkt. No. 63. Rosario did not oppose. For the reasons which follow, it is recommended that Anson's motion be granted.

### I. Background

The facts are related herein in the light most favorable to Rosario as the non-moving party. See subsection III(A) infra. Pursuant to a Decision and Order of Chief District Judge Gary L. Sharpe dated September 17, 2013, two other defendants were dismissed, without prejudice, from the current action. Dkt. No. 39.

### A. Failure to Respond

The Court notified Rosario of the response deadline. Dkt. No. 66. Defendants provided Rosario with notice of the consequences of failing to respond. Dkt. No. 63 at 3. Despite this notice, Rosario did not respond to the motion for summary judgment.

"[S]ummary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Thus, "[t]he fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically." Id. at 486. Even in the absence of a response, a defendant is entitled to judgment only if the material facts demonstrate his entitlement to judgment as a matter of law. Id.; FED. R. CIV. P. 56(c). "A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . ."

2

Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (internal citations omitted); see also Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004) (same). The facts set forth in defendant's Rule 7.1 Statement of Material Facts (Dkt. No. 65) are accepted as true as to those facts that are not disputed in Rosario's complaint. N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.").

### B. Introduction

On October 28, 2010, Rosario transferred from Lakeview Shock Incarceration Facility ("Lakeview") to Summit Shock Incarceration Correctional Facility ("Summit Shock").[2] Compl. at 8; Rosario Dep. (Dkt. No. 63-5) at 13.[3]

### C. November 1, 2010-November 11, 2010

On November 1, 2010, while at Summit Shock, Rosario was participating in a physical training session when he felt a "click" in his left knee. Compl. at 8. After returning to his dormitory, Rosario advised non-party Drill Instructor Pape of the pain he was experiencing, and Pape instructed him to fill out a sick "call slip" to be seen by medical staff the next day. Id.

On November 2, 2010, Rosario reported to sick call, where he was seen by

---

[2] The Shock program is a voluntary boot-camp-style drug treatment program available to inmates with non-violent drug convictions; inmates who successfully complete the program can shorten their sentence. Rosario Dep. at 14-15, 17-18, 28-27.

[3] The page numbers following Dkt. No. 63-5 refer to the pagination of the header numbers generated by CM/ECF, not the pagination provided by the transcript.

3

defendant John Doe #1, a facility nurse, who provided Rosario with anti-inflammatory medication and Icy Hot, and advised Rosario that he could continue physical training. Compl. at 8; Rosario Dep. at 32, 34-35. That night, Rosario continued to experience pain in his knee and began to limp. Compl. at 8. Rosario informed Pape of his pain and filled out another call slip. Id.

On November 3, 2010, Rosario continued to suffer from weakness in his left knee and had difficulty walking, but was ordered to participate in physical training, including a run. Compl. at 8. When Rosario arrived at sick call after physical training, he advised the medical staff that the physical training sessions were making his condition worse. Id. Medical staff told Rosario that the knee pain was not uncommon for someone of his weight and that he could continue with physical training. Id. at 8-9; Rosario Dep. at 37. Rosario also advised John Doe #1 that he was asthmatic and his inhaler was half empty, but John Doe #1 denied his request to refill his inhaler. Compl. at 9.

Upon returning to the dormitory, Rosario was advised that he was being sent to an "outside call out" to see John Doe #2,[4] Dr. John McPhillips ("McPhillips"), a health care provider at Hale Creek Correctional Facility ("Hale Creek"). Compl. at 9. McPhillips advised Rosario that (1) he had a normal range of motion in his left knee, (2) there was no significant size difference between the left and right knees, (3) he would not be provided an inhaler because his respiratory levels were within normal limits, and (4) he was not actively asthmatic. Compl. at 8-9; McPhillips Decl. (Dkt. No. 63-2) ¶ 7-9, 14. As a result of these determinations, Rosario was cleared to continue participating in the physical training

---

[4] All claims against John Doe #2 were dismissed by a prior Order of this Court. See Dkt. No. 39, supra.

4

sessions.  Compl. at 9; Anson Decl. (Dkt. No. 63-1) ¶ 10.  According to McPhillips, he denied Rosario an inhaler because his respiratory levels were within normal limits. McPhillips Decl. ¶ 7, 11-12, 14-16.  He further observed that Rosario made upper respiratory sounds with his mouth which were transmitted to his chest, but the sounds were not being made by his chest.  Id. ¶ 7, 16.  Additionally, McPhillips noted that Rosario's prescription for Albuterol Metered Dose Inhaler (MDI) had been filled on September 1, 2010, which should have lasted a minimum of three months, but had been used in approximately two months, which suggested overuse.  Id. ¶ 11-12, 16.

On November 5, 2010, Rosario's request for a referral to see a specialist due to his continued pain was denied.  Compl. at 9.  That same day, Rosario went to sick call with continued complaints of knee pain and chest pain.  Id.  Upon examination, John Doe #1 again advised Rosario that his respiratory levels were within normal limits and that his knee pain was a result of physical exertion, hi poor physical conditioning, and his weight.  Compl. at 8-9, 12; McPhillips Decl. ¶ 7-8.  John Doe #1 gave Rosario ibuprofen and analgesic balm and cleared him to continue with physical training.  Compl. at 9; McPhillips Decl. ¶ 8.  On November 10, 2010, John Doe #1 took Rosario's empty inhaler and advised Rosario that the inhaler would not be replaced.  Id. ¶ 12; Compl. at 9.

On November 10, 2010, during a physical training session, Rosario stopped running and began to walk.  Compl. at 9.  Defendant Blyth,[5] a correctional officer, told Rosario that if he continued to walk, in defiance of Blyth's orders given during training, Rosario would be written up for disobeying a direct order.  Id. at 10.  Rosario replied that he "was not dieing

---

[5] All claims against defendant Blyth were dismissed by prior Order of this Court.  See Dkt. No. 39, supra.

5

[sic] for anyone." Id. Subsequently, Blyth placed Rosario in the back of a pick-up truck, and non-party Sergeant Whittaker took Rosario to receive medical attention. Id. Medical staff again cleared Rosario to participate in physical training and determined that Rosario was not experiencing an asthmatic event. Compl. at 9; Galligan Affirmation Exhibit "A" (Dkt. No. 64 at 43); McPhillips Decl. ¶ 10, 12, 14-15; Anson Decl. ¶ 10. Upon returning to his dormitory, Rosario received a misbehavior report authored by Blyth for refusing to comply with a direct order. Compl. at 10, 41. On the same day, Rosario filed a contact slip to see the corrections counselor, non-party Moody, to discuss his pain and desire to leave the Shock program. Id. at 10, 13.

### C. November 12, 2010-December 27, 2010

On Friday, November 12, 2010, Rosario was called into Captain Anson's office to discuss his request to see Moody. Compl. at 10; Anson. Decl. ¶ 9. Rosario advised Anson of his medical conditions and that he wished to sign out of the program so that he may transfer facilities to receive proper medical care, and his fear that continued participation in the Shock program would hurt his knee. Compl. at 10, 11; Anson Decl. ¶ 10. Anson refused this request. Compl. at 11. According to Anson, he relied on the determinations of the Summit Shock medical staff that Rosario was fit to participate in physical training, and, instead, advised Rosario to take the weekend to think about his decision. Compl. at 11; Rosario Dep. at 43; Anson Decl. ¶ 10, 13. Anson contends that he advised Rosario to take the weekend to think over his decision to leave the Shock program, and advise the counselor of his decision that following Monday, because successful completion of the

6

program could have shortened Rosario's time of incarceration. Anson Decl. ¶ 10-11. By contrast, Rosario contends that Anson advised him to think about his decision to leave the Shock program and that either Anson or Moody would follow-up with him that Monday. Compl. at 11; Rosario Dep. at 43. On Monday, November 15, 2010, Rosario did not receive a follow-up call from Anson or Moody, and did not submit a call slip to speak to Anson. Compl. at 11; Rosario Dep. at 43-45.

On Tuesday, November 16, 2010, Rosario was taken to Rikers Island on a family court trip where he was seen by medical staff and given medication and an ace bandage. Compl. at 11; Rosario Dep. at 44. Rikers Island medical staff advised Rosario to bring his condition to the attention of the medical staff at Summit Shock. Compl. at 11. While at Rikers Island, Rosario wrote a complaint to non-party DOCCS Commissioner Fischer, detailing the allegedly inadequate care he was receiving at Summit Shock. Id.

On December 3, 2010, Rosario returned from Rikers Island to Summit Shock. Rosario Dep. at 47; Dkt. No. 63-4 at 26. Rosario contacted Anson upon his return to Summit Shock, and the two discussed his participation in the program. Dkt. No. 63-5 at 47-50. Following this conversation, Rosario refused to return to his dormitory or continue with the Shock program. Compl. at 57-58. For refusing to comply with this direct order, Rosario received a misbehavior report authored by non-party Sergeant Miller and was transferred to another facility, Mohawk Correctional Facility ("Mohawk"). Id.; Dkt. No. 63-4 at 26. Rosario contends that he refused to return to his dormitory because Anson advised that the only way out of the Shock program was to refuse a direct order so that he would be transferred to another facility. Dkt. No. 63-5 at 49-50.

On December 16, 2010, non-party Carl J. Koenigsmann, M.D. responded to

7

Rosario's complaint to Fischer, noting that Rosario went to sick call six times between October 28, 2010 and November 16, 2010, and a primary care physician found that Rosario's mild inflammation of the knee was not uncommon for someone of Rosario's weight. Compl. at 12, 42.

On December 27, 2010, Rosario underwent an X-ray of his left knee. McPhillips Decl. ¶ 18. The radiology report concluded, "[m]inor degenerative changes. No acute radiographic findings." Id.; Compl. at 26. On September 12, 2011, Rosario underwent an MRI of his left knee. McPhillips Decl. ¶ 19. The radiology report impression states, "[s]mall popliteal cyst [benign fluid filled swelling]. No other significant abnormalities." Id.; Dkt. No. 64 at 63.

### III. Discussion

Rosario claims that his Eighth Amendment rights were violated when Anson denied his request to leave the Shock program so that he could receive medical treatment at another facility. Compl. at 10, 11. Anson contends that Rosario has failed to establish a prima facie claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment. Dkt. No. 63-6 at 4-7. Anson alternatively argues that he is entitled to qualified immunity. Id. at 7-9.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving

party is entitled to judgment as a matter of law. FED R. CIV. P. 56(a). The moving party has the burden to show the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. FED R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1998).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by

9

> pro se litigants," . . . and that pro se status "does not exempt a
> party from compliance with relevant rules of procedural and
> substantive law," . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

## B. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. The prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). In order to succeed on a claim that prison conditions imposed an excessive risk to an inmate in violation of the Eighth Amendment, a prisoner must demonstrate the defendant acted with, "deliberate indifference to serious medical needs . . . ." Estelle v. Gamble, 429 U.S. 97, 104 (1976). This deliberate indifference standard includes both an objective and subjective component. Hathaway, 37 F.3d at 66. Objectively, the alleged deprivation must be "sufficiently serious." Id. Subjectively, the defendant "must act with a sufficiently culpable state of mind." Id.

Deprivation of medical treatment is "sufficiently serious" if the injury is one where there is, "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, 37 F.3d at 66 (internal citation omitted). "'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v.

10

Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Because there is no bright-line rule to determine whether a medical condition is sufficiently serious, the Second Circuit has identified several factors that are highly relevant to the inquiry such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal citation omitted)).

A prison official acts with a culpable state of mind when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Non-medical personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to attendant prison personnel.'" Baumann v. Walsh, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999) (internal citation omitted). "[M]ere disagreement over proper treatment does not create a constitutional claim . . . ." as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

In this case, Rosario has alleged that he was suffering from two serious medical conditions, ongoing knee pain and asthma. Compl. at 8-10. Rosario alleges his complaint

11

of knee discomfort and his need for an asthma inhaler were ignored by Anson and Shock medical staff. Id. at 8-11.

### 1. Sufficiently Serious Medical Conditions

### A. Knee Pain

In addressing the first prong of the Brock factors, the record clearly demonstrates that from November 2, 2010 to November 16, 2010, Rosario returned to sick call on an almost daily basis, and was seen by numerous medical professionals, all of whom explained that Rosario's knee pain was normal for someone of his weight. 315 F.3d at 162-63; Compl. at 8-9, 12, 42; Rosario Dep. at 37. During each visit, Rosario received authorization only for mild, over-the-counter pain medication to treat his knee, and was advised that he could continue with physical training. Brock, 315 F.3d at 162-63; Compl. at 8-9, 11, 14, 42; Rosario Dep. at 32, 34-35; McPhillips Decl. ¶ 8, 13; Anson Decl. ¶ 10. The medical staff agreed that the slight swelling was attributable to Rosario's size and the fact that he was not accustomed to physical exertion. Compl. at 8-9, 12; Rosario Dep. at 37; McPhillips Decl. ¶ 2-3, 8. Here, because Rosario was repeatedly seen by medical staff, who determined that his knee pain was nothing more than slight swelling due to his physical shape, such a condition was not 'important and worthy of comment or treatment'. Brock, 315 F.3d at 162-63; Compl. at 8-9, 12; Rosario Dep. at 37; McPhillips Decl. ¶ 2-3, 8. Accordingly, Rosario has failed to demonstrate that a "reasonable doctor or patient would perceive [his knee pain] as important or worthy of comment or treatment." Brock, 315 F.3d at 162-63 (internal quotation marks and citation omitted).

Addressing the second prong, whether the medical condition significantly affects the plaintiff's daily activities, Rosario alleges that the knee pain caused him to have difficulty walking, thereby affecting his daily activities. Brock, 315 F.3d at 162-63; Compl. at 8, 12. Anson presents evidence in support of his motion that Rosario's slight knee swelling was due to his physical condition and was deemed not deemed significant enough to prevent him from participating in physical training. Brock, 315 F.3d at 162-63; McPhillips Decl. ¶ 2-3, 8, 20. Insofar as Rosario contends that his knee pain significantly affected the daily activities of physical training that he was required to perform in the Shock program, including a substantial amount of running, this may suffice to establish that his knee pain was sufficiently serious. Brock, 315 F.3d at 162-63; Compl. at 8, 12. However, as will be discussed, Rosario fails to meet the subjective part of the test – that Anson acted with a culpable state of mind and was, therefore, deliberately indifferent to his knee injury. See subsection III(B)(2) infra.

Addressing the final Brock prong, existence of chronic and substantial pain, Rosario returned to sick call six times complaining of knee pain; however, during each visit Rosario received authorization only for mild, over-the-counter pain medication for his complaints, including some variation of ibuprofen, an ace bandage, and Icy Hot. 315 F.3d at 162-63; Compl. at 8, 9, 11-12, 14, 42; McPhillips Decl. ¶ 15, 17-18. Rosario contends that, as a result of Anson's deliberate indifference to his medical conditions, he suffered from knee pain and meniscus and ligament tears that may require surgery. Compl. at 3. However, McPhillips contends that Rosario's left knee inflammation was neither a permanent nor a serious condition, and that his symptoms would be alleviated with ibuprofen and use of analgesic balm. McPhillips Decl. ¶ 20. In addition to the aforementioned Brock analysis,

courts have generally held that knee pain does not constitute a serious medical condition. 315 F.3d at 162-63; See Johnson v. Wright, 477 F. Supp. 2d 572, 575 (W.D.N.Y. 2007) (holding that a prisoner's torn meniscus suffered as result of a basketball injury was not a serious medical need) (citing Moody v. Pickles, No. 03-CV-850 (DEP), 2006 WL 2645124, at *6 (N.D.N.Y. Sept. 13, 2006)) (holding that a "medial meniscal tear, with joint effusion" was not a serious medical need).[6] To the extent that Rosario claims he should have been given a more intensive form of treatment for his knee, an inmate's belief that he should have received different or stronger treatment than that provided by medical staff does not amount to a constitutional violation. See Veloz v. New York, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004).

Despite that disagreement with treatment does not establish a constitutional violation, as Rosario repeatedly sought medical care for his complaints of knee pain, there exists a question of fact whether his knee pain caused him chronic and substantial pain. Brock, 315 F.3d at 162-63; Compl. at 12.

Accordingly, Rosario has demonstrated a material question of fact as to whether his knee pain significantly affected his daily activities and caused him chronic and substantial pain. Brock, 315 F.3d at 162-63. Thus, there exists a question of fact whether plaintiff's knee pain was sufficiently serious under Brock and its progeny.

### B. Asthma

Addressing the first prong of the Brock test, from November 2, 2010 to November

---

[6] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

14

16, 2010, Rosario returned to sick call on an almost daily basis, and was seen by numerous medical professionals during that time, all of whom concluded that Rosario was not asthmatic. 315 F.3d at 162-63; Compl. at 42; McPhillips Decl. ¶ 14. The medical staff agreed that his shortness of breath was attributable to Rosario's size and the fact that he was not accustomed to physical exertion. Compl. at 9; McPhillips Decl. ¶ 10, 12, 14-15; Dkt. No. 64 at 43. During each visit, medical professionals advised Rosario that he could continue physical training. Compl. at 9; Anson Decl. ¶ 10. Nothing in the complaint indicates that, as a result of asthma or the denied inhaler, Rosario's daily life had been affected, or that he suffered from chronic and substantial pain. Brock, 315 F.3d at 162-63; Compl. at 9. Further, McPhillips indicated that Rosario made respiratory sounds to mimic chest sounds although his chest was clear. McPhillips Decl. ¶ 7, 16. Additionally, McPhillips' medical opinion indicated that Rosario's shortness of breath as a result of physical exertion was not a serious medical condition. Compl. at 9; McPhillips Decl. ¶ 10, 12, 14-15. As noted, disagreement with the level of treatment provided does not constitute deliberate indifference. Sonds, 151 F. Supp. 2d at 312.

This Court has held previously that an asthma condition, absent a substantial asthma attack, does not constitute a serious medical condition. See Bost v. Bockelmann, No. 9:04-CV-0246 (GLS/DEP), 2007 WL 527320, at *8-9 (N.D.N.Y. Feb. 20, 2007) (citing cases for the proposition that being asthmatic – a person susceptible to asthma attacks – is not a sufficiently serious condition, which is distinct from the situation in which an inmate is suffering an actual attack). Courts have also held that "[a]lthough an asthma condition alone may not be serious enough to constitute a sufficient medical condition, an asthma attack, depending on its severity, may be sufficient." Carlisle v. Goord, No. 9:03-CV-296

15

(FJS/GHL), 2007 WL 2769566, at *4 (N.D.N.Y. Sept. 21, 2007); cf. Scott v. DelSignore, No. 02-CV-029 (LGF), 2005 WL 425473, at *9 (W.D.N.Y. Feb. 18, 2005) (stating that active asthma symptoms may support an Eighth Amendment claim).

Here, although Rosario complained of having an asthma attack during a physical training session on November 10, 2010, he was examined by medical staff immediately following the session, who performed numerous tests and determined that Rosario was not suffering from an asthmatic event, nor was he actively asthmatic. Dkt. No. 64 at 43; McPhillips Decl. ¶ 12, 14-15. Further, Rosario does not allege to have suffered any significant or lasting harm as a result of the alleged attack.

Accordingly, Rosario has failed to present a material question of fact whether his asthma was a serious medical condition. Brock, 315 F.3d at 162-63.

### 2. Culpable State of Mind

Even if Rosario had raised a triable issue as to the objective prong of his Eighth Amendment medical care claim against Anson regarding both his knee pain and asthma, Rosario has not demonstrated that Anson had a culpable state of mind, and, therefore, was deliberately indifferent to his medical needs. Hathaway, 37 F.3d at 66.

On Friday, November 12, 2010, Rosario informed Anson of his desire to discontinue his participation in the Shock program and to be transferred to another facility. Compl. at 10, 11. Anson first learned of Rosario's alleged medical conditions during this meeting, and as a non-medical prison official, relied upon the medical opinions of Summit Shock medical staff that Rosario's knee discomfort and shortness of breath were neither

16

excessive risks to Rosario's health, nor serious medical conditions, and that Rosario was cleared to continue participating in physical training. Compl. at 9, 11; Anson Decl. ¶ 10, 13. Thus, Anson was not aware of a substantial risk of harm when he recommended that Rosario continue in the program for the weekend. Farmer, 511 U.S. at 837. Moreover, Anson did not intentionally deny or delay Rosario's access to medical care; rather, he recommended that Rosario defer his decision to voluntarily withdraw from the Shock program for just three days. Baumann, 36 F. Supp. 2d at 512; Compl. at 11; Anson Decl. ¶ 10-11. Thus, in instructing that Rosario take the weekend to consider and balance the pros and cons of leaving Shock or remaining in the program and reducing his incarceration time, Anson was not aware that Rosario would suffer any serious harm. Baumann, 36 F. Supp. 2d at 512; Compl. at 11; Anson Decl. ¶ 10-11. Further, a three-day wait for medical care is not the type of delay that constitutes deliberate indifference. See Taylor v. Kurtz, No. 00-CV-700 (LGF), 2004 WL 2414847, at *1-4 (W.D.N.Y. Oct. 28, 2004) (finding no Eighth Amendment violation where prisoner complained of a failure to perform knee surgery for nine months after discovering the torn meniscus).

Moreover, Rosario fails to present any specific evidence to demonstrate the connection between the alleged dilatory actions of Anson and the need for medical attention. That Rosario could not follow up with Anson because he had a family court visit early that week or that he believed Anson would contact him that Monday also does not constitute deliberate indifference. Compl. at 11; Rosario Dep. at 44. Rosario contacted Anson upon his return to Summit, and the two discussed his participation in the program. Dkt. No. 63-5 at 47-50. Rosario has demonstrated no intentional delay in access to care. Baumann, 36 F. Supp. 2d at 512. McPhillips' medical opinion indicated that neither

17

Rosario's left knee inflamation, nor his asthma, were serious medical conditions. McPhillips Decl. ¶ 8, 15, 20. Anson was entitled to rely on these findings. See Abdush-Shahid v. Coughlin, 933 F. Supp. 168, 183 (N.D.N.Y. 1996) (citing cases for the proposition that supervisory, non-medical personnel are entitled to rely on the opinion of medical staff concerning the proper course of treatment); see also Joyner v. Greiner, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002). Moreover, there is no indication that Anson was present during Rosario's alleged asthma attack or knee injury, and refused to provide Rosario care or notify medical staff. Thus, Rosario has failed to raise a material question of fact whether Anson knew of and disregarded an excessive risk to his health or safety. Farmer, 511 U.S. at 837.

Accordingly, although Rosario has arguably demonstrated a material issue of fact as to whether his knee pain was a sufficiently serious condition, Rosario has failed to demonstrate that Anson was deliberately indifferent to a serious medical condition, and it is, therefore, recommended that defendant's motion on this ground be granted.[7]

### C. Qualified Immunity

Anson claims that, even if Rosario's constitutional claim is substantiated, he is entitled to qualified immunity. Dkt. No. 63-6 at 7-10. Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which

---

[7] Although the undersigned has concluded Rosario has not shown that his asthma was sufficiently serious, even if he had made this showing, his medical indifference claim would still fail because no deliberate indifference to his asthma was shown.

18

a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted). A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

Here, Rosario has not established a constitutional violation to satisfy the first prong of the inquiry. However, even if Rosario had met the first prong, Rosario fails to meet the second prong because it was objectively reasonable for Anson to believe that, by telling Rosario to take the weekend to think about his decision to voluntarily withdraw from the Shock program – because remaining in the program could benefit Rosario and reduce his incarceration time – he was not violating Rosario's constitutional rights.

Accordingly, in the alternative, it is recommended that defendant's motion on this ground be granted.

### IV. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendant's motion for summary judgment (Dkt. No. 63) be **GRANTED**; and it is further

**RECOMMENDED** that plaintiff's claims against John Doe #1 be dismissed without prejudice for failure to serve that defendant, despite notice of such requirement (Dkt. Nos. 30, 39); and it is further

**ORDERED** that a copy of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within **fourteen (14) days** after being served with a copy of the . . . recommendation." N.D.N.Y.L.R. 72.1(c) (citing 28 U.S.C. § 636 (b) (1) (B)-(C)).

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. §636(b)(1); FED R. CIV. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated: July 31, 2015
      Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge