**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**WILFREDO ROSARIO,**

              **Plaintiff,**

v.                                                     **9:12-cv-1506 (BKS/CFH)**

**CAPTAIN ANSON, Summit Shock
Incarceration Facility, JOHN DOE #1,
Facility Nurse, Summit Shock Incarceration
Facility.**

              **Defendants.**

_____

**APPEARANCES:**

Wilfredo Rosario
Plaintiff Pro Se
Orlando, Florida

Hon. Eric T. Schneiderman
Attorney General for the State of New York
Colleen D. Galligan, Esq.
Assistant Attorney General
The Capitol
Albany, New York 122241-0341

**Hon. Brenda K. Sannes, United States District Judge:**

                    **MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff pro se Wilfredo Rosario brought this action under 42 U.S.C. § 1983 alleging that

defendant Captain Anson was deliberately indifferent to his serious medical needs, in violation

of the Eighth Amendment, by refusing to discharge plaintiff from the program he was participating in at Summit Shock Incarceration Correctional Facility[1] and transfer him to another facility so that he could receive medical treatment for his knee condition and asthma. Dkt. No. 2. Defendants filed a motion for summary judgment on December 10, 2014, seeking to dismiss the complaint. Dkt. No. 63. Plaintiff did not file a response to the motion. Defendants' motion was referred to United States Magistrate Judge Christian F. Hummel for a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).

On July 31, 2015, Magistrate Judge Hummel issued a Report-Recommendation and Order recommending that defendants' motion for summary judgment be granted and that plaintiff's claims against John Doe #1 be dismissed without prejudice for failure to serve that defendant. Dkt. No. 69, p. 20. Magistrate Judge Hummel's recommendation is based on his conclusion that no reasonable fact finder could conclude that Captain Anson was aware of a substantial risk of harm when he recommended that plaintiff continue in the program for the weekend or that Captain Anson intentionally delayed or denied medical care. Dkt. No. 69, pp. 16-17.

Plaintiff objects to Magistrate Judge Hummel's conclusion and asserts that he was denied adequate medical care for his knee condition and asthma at Summit and that Captain Anson ignored" his "constant pleas" to be discharged from Summit "in order to receive immediate

---

[1] According to defendants, the "Shock Program is a voluntary boot camp style drug treatment program available to inmates with non-violent drug convictions; inmates who successfully complete the program can shorten their sentence." Dkt. No. 65, ¶ 2.

2

medical attention." Dkt. No. 73, p. 4. Defendant has not responded to this objection. For the reasons set forth below, the Report-Recommendation is adopted in its entirety.

## II. DISCUSSION

### A. Standard

The Court adopts Magistrate Judge Hummel's summary of the facts and applicable law and does not repeat them here. This Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

### B. Sufficiently Serious Medical Conditions - Objective

In his objections, plaintiff argues that the evidence shows that he had no "knee problems prior to entering the shock program," that he suffered knee swelling after entering the shock program, and that he was asthmatic. Dkt. No. 73, p. 2. Plaintiff's objection with respect to his knee condition is irrelevant, however, because Magistrate Judge Hummel found "there exists a question of fact whether plaintiff's knee pain was sufficiently serious," (Dkt. No. 69, p. 14), in satisfaction of the objective element of an Eighth Amendment deliberate indifference to serious medical needs claim. *See Spavone v. New York State Dep't of Corr. Svcs.*, 719 F.3d 127, 138 (2d Cir. 2013) ("The objective component requires that the deprivation be 'sufficiently serious,' creating a risk of 'death, degeneration, or extreme pain.'") (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)).

3

Further, although Magistrate Judge Hummel found the evidence insufficient to allow a reasonable factfinder to conclude that plaintiff's asthma was sufficiently serious, Dkt. No. 69, p. 16, even crediting plaintiff's assertion in his objections that the deprivation of an inhaler was sufficient to meet the first, objective element of a deliberate indifference claim, Dkt. No. 73, p. 3, plaintiff fails to raise a genuine issue of fact as to the second, subjective element of the claim. *Spavone*, 719 F.3d at 138 ("The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care.").

### C. Deliberate Indifference – Subjective

In his objections, plaintiff asserts that when he spoke with Captain Anson on November 12, 2010,[2] Captain Anson "acknowledged the swelling on the knee when the plaintiff rolled up his pants and revealed. . . the injury on his left knee." Dkt. No. 73, p. 4. Plaintiff contends that he asked Captain Anson to discharge him "from the shock program in order to receive immediate medical attention." *Id*. Plaintiff asserts that the he has suffered "long term complications . . . which . . . still affects his left leg and prevents [him] from performing everyday physical labor duties." *Id*.

The subjective element of a deliberate indifference claim requires evidence that "that the charged official [must] act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result." *Spavone*, 719 F.3d at 138. "Officials need only be aware of the risk of

---

[2] In his objections, plaintiff states that he made "constant pleas to Anson to be discharged" from Summit. Dkt. No. 73, p. 4. Plaintiff's objections, however, are unsworn, and there is no evidence in the record indicating that his pleas were "constant." The record indicates that plaintiff requested to speak to Captain Anson once prior to their Friday, November 12, 2012 meeting and spoke with officers about seeing Captain Anson the following Monday. Dkt. No. 63-5, p. 45.

4

harm, not intend harm." *Id.*, *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that to establish deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Plaintiff does not present any evidence from which a reasonable fact finder could conclude that Captain Anson acted with a "sufficiently culpable mental state." *Salahuddin v. Goord*, 467 F.3d 263, 282 (2d Cir. 2006). Even viewed in the light most favorable to plaintiff, the evidence shows that Captain Anson's delay in allowing plaintiff to sign out of the program was the result of his efforts to persuade plaintiff to remain in the program. Dkt. No. 63-1, p. 3. Captain Anson explained that his "direction to plaintiff to think over his decision was purely meant to help plaintiff, since continued participation in the shock treatment program would be to his benefit and would have shortened his time of incarceration." *Id*., s*ee, e.g.*, *Victor v. Milicevic*, 361 F. App'x 212, 215 (2d Cir. 2010) (finding summary judgment appropriate where the plaintiff "failed to demonstrate that Laux was deliberately indifferent to his serious medical needs because the ten-month delay in receiving a liver biopsy was the result of [the defendant's] belief that [the plaintiff] did not meet the Department of Correctional Services'. . . criteria for such a procedure."). Though plaintiff stated in his deposition that he expected Captain Anson to "call [him] back up" on Monday, November 15, Dkt. No. 63-5, p. 42, there is no evidence from which

a factfinder could conclude that the reason Captain Anson failed to contact plaintiff that day was deliberate indifference to plaintiff's serious medical needs.[3]

Nor is there evidence that Captain Anson had reason to believe that requiring plaintiff to remain for the weekend posed a substantial risk of harm. Although plaintiff had reported that his knee was "building up a lot of inflammation" and "getting wors[e]," and showed Captain Anson his swollen knee, Captain Anson explained that he nevertheless "directed plaintiff to assess his situation over the coming weekend before making a decision to quit the program," because "plaintiff was medically cleared and had actively participated in physical training" the day of their meeting and the day before, Dkt. No. 63-1, p. 2. There is therefore no evidence from which a reasonable fact finder could conclude that Captain Anson had reason to believe that requiring plaintiff to remain at Summit for the weekend would be "seriously harmful." *Salahuddin*, 467 F.3d at 282-83 (finding that although the defendant's conclusion that that cancelling a biopsy may have been "unsound," in the absence of evidence that "any physician ever informed [him] that it would be harmful to cancel the scheduled . . . biopsy, "the record evidence does not raise a genuine factual question concerning whether [the defendant] acted with a sufficiently culpable mental state."). Thus, plaintiff has failed to raise a genuine issue of material fact as to whether Captain Anson was deliberately indifferent to his serious medical needs.

The Court has reviewed for clear error the portions of the Report-Recommendation to which plaintiff has not objected and finds none.

---

[3] Plaintiff's transport on November 16, 2010, to another facility for a court appearance was an additional source of delay. Dkt. No. 65, ¶ 37. There is no evidence that this transfer was attributable to Captain Anson.

## III. CONCLUSION

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 69) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that defendant's motion for summary judgment (Dkt. No. 63) is **GRANTED**; and it is further

**ORDERED** that plaintiff's claims against John Doe # 1 are **DISMISSED** without prejudice for failure to serve that defendant, despite notice of that requirement (Dkt. Nos. 30, 39); and it is further

**ORDERED** that the complaint (Dkt. No. 2) is **DISMISSED** and the Clerk of the Court is directed to close this case; and it is further

**ORDERED** that a copy of this Memorandum-Decision and Order as well as all unpublished decisions cited above be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**Dated: September 28, 2015**

Brenda K. Sannes
U.S. District Judge